ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9 10 24

THE RESOURCE GROUP INTERNATIONAL
LIMITED, TRG PAKISTAN LIMITED,
MOHAMMED KHAISHGI, AND HASNAIN
ASLAM,

                          Plaintiffs,

        - against -

MUHAMMAD ZIAULLAH KHAN CHISHTI,

                          Defendant.

23 Civ. 01760 (LLS)

ORDER

    Plaintiffs The Resource Group International Limited,
Mohammed Khaishgi, Hasnain Aslam, and TRG Pakistan Limited
(collectively, "Resource Group") move for a preliminary
injunction enjoining defendant Muhammad Ziaullah Khan Chishti
from proceeding with a lawsuit he filed in Pakistan against
Resource Group on June 14, 2024 (the "Pakistan Suit"). That
requested relief is referred to as an "anti-suit injunction."

**Background**

    While the Court presumes the parties' knowledge of the
facts, a brief review of the procedural history is helpful to
understand the circumstances giving rise to the present motion.
On February 14, 2023, Chishti filed claims against Resource
Group before JAMS (the "JAMS Arbitration").[1] (Dkt. No. 137-1). On

---

[1] Chishti's claims in the JAMS Arbitration were amended on April
13, 2023.

1

March 1, 2023, Resource Group moved for a temporary restraining order and preliminary injunction enjoining the JAMS Arbitration based upon a release agreement and covenant not to sue that Chishti signed (the "Release Agreement"), which allegedly barred Chishti's claims in the JAMS Arbitration. (Dkt. No. 5). This Court declined to grant that application, and the Second Circuit reversed. (Dkt. Nos. 22, 51). While the case was before the Second Circuit, the parties chose an arbitrator in the JAMS Arbitration, Judge Francis. Judge Francis stayed the JAMS Arbitration until this Court determined whether Chishti's claims in the JAMS Arbitration were released and therefore could not be arbitrated. (Dkt. No. 137-3).

Following the Second Circuit's decision and Judge Francis' stay of the JAMS Arbitration, Resource Group withdrew its motion for a preliminary injunction, and, following a conference before this Court on April 5, 2024, the parties contemplated moving towards discovery. (Dkt. No. 63). On April 29, 2024, Chishti answered Resource Group's Complaint, asserted counterclaims against Resource Group, and requested a preliminary injunction enjoining Resource Group from taking any action to impede the JAMS Arbitration. (Dkt. Nos. 65-67). This Court ordered expedited discovery to aid its determination of Chishti's preliminary injunction. (Dkt. No.75).

While that expedited discovery related to Chishti's motion for a preliminary injunction was underway, Chishti filed the Pakistan Suit against TRG Pakistan Limited, The Resource Group International Limited, Mohammed Khaishgi, Hasnain Aslam (the Chief Executive of TRG Pakistan Limited and Chief Investment Officer/Director of the Resource Group International Limited), Khaldoon Bin Lateef (Director the Resource Group International Limited), Zafar Iqbal Sobani (Director of TRG Pakistan Limited and of The Resource Group International Limited), Ahmed Aziz Zuberi (Director of TRG Pakistan Limited), John Leone (Director of TRG Pakistan Limited and Chairman/Director of the Resource Group International Limited), Patrick McGinnis (Director of the Resource Group International Limited), and the Securities and Exchange Commission of Pakistan (together, the "Pakistan defendants").

The Pakistan Suit mirrors the claims brought against Resource Group in the original JAMS Arbitration. (Dkt. No. 108-4). Two examples illustrate the similarity between the JAMS Arbitration and the Pakistan Suit. In the Pakistan Suit, Chishti requests a declaration that certain Pakistan defendants "breached Section 8.5 of the Stock Purchase Agreement by voting and/or acting to reduce the TRG-I/The Resource Group International Limited board from ten to seven directors." Id. (Pakistan Suit Prayer ¶ a). In the JAMS Arbitration, Chishti

3

requests a declaration that the JAMS defendants "breached Section 8.5 of the Stock Purchase Agreement by voting and/or acting to reduce the TRG-I board from ten to seven directors, and by voting and/or acting to reduce the number of TRG-I directors that TRG-P could appoint to three." (Dkt. No. 108-1) (JAMS Arbitration Demand at ¶ 220(a)).

In the Pakistan Suit, Chishti requests a declaration that "TRG-I's current board of directors was invalidly constituted in breach of the Stock Purchase Agreement." (Dkt. No. 108-4) (Pakistan Suit Prayer ¶ b). Chishti requests the same relief in the JAMS Arbitration. (Dkt. No. 108-1) (JAMS Arbitration Demand at ¶ 220(c)). In addition to those two examples, at least seven of the other claims brought in the Pakistan Suit are identical or substantially similar to the claims brought in the JAMS Arbitration.

In response, Resource Group moved to file a supplemental complaint against Chishti,[2] which this Court granted, seeking various forms of relief related to the Pakistan Suit. (Dkt. Nos.

---

[2] The Court has personal jurisdiction over Chishti because he contractually consented to this Court's jurisdiction in the Release Agreement. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."); Dkt. No. 8-1 ("Release Agreement" at ¶ 2). Chishti has not challenged the enforceability of that forum selection clause.

4

136, 137). Resource Group also moved for a preliminary injunction enjoining the Pakistan Suit. (Dkt. No. 106).

## Legal Standards

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum." Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004) (citing China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35–36 (2d Cir. 1987)) (affirming a district court's grant of an injunction prohibiting an anti-suit injunction). However, "principles of comity counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint." Id. (internal quotations omitted).

When deciding a motion seeking an anti-suit injunction, the Court must first assess whether the requirements for an anti-injunction suit are met, and then ensure that the familiar test for a preliminary injunction is satisfied. E.g., Software AG, Inc. v. Consist Software Sols., Inc., 323 F. App'x 11, 12 (2d Cir. 2009).

To determine whether the Court may enjoin a party from filing a suit in a foreign jurisdiction, district courts in this Circuit apply a test developed in China Trade, 837 F.2d 33 (2d Cir. 1987). The Court must first consider two threshold questions: (1) whether the parties to both suits are the same

5

and (2) whether resolution of the case before the enjoining court would be dispositive of the enjoined action. Id. at 36.

If those threshold requirements are met, then the Court must consider additional factors, including whether the foreign proceeding would: "(1) frustrat[e] ... a policy in the enjoining forum; (2) ... be vexatious; (3) ... threat[en] ... the issuing court's in rem or quasi in rem jurisdiction; (4) ... prejudice other equitable considerations; or (5) ... result in delay, inconvenience, expense, inconsistency, or a race to judgment." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 119 (2d Cir. 2007) (alterations in the original) (internal citations omitted). Each factor must be considered, but "China Trade instructed that two of these factors should be accorded 'greater significance': whether the foreign action threatens the enjoining forum's jurisdiction or its 'strong public policies.'" Id. (quoting China Trade, 837 F.2d at 36).

If the China Trade factors are satisfied, then this Court will "turn to the ordinary preliminary injunction test." Software AG, 323 F. App'x at 12; Keep on Kicking Music, Ltd. v. Hibbert, 268 F. Supp. 3d 585, 591 (S.D.N.Y. 2017). That familiar test asks whether the party seeking an injunction has demonstrated "'(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the

6

merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" Keep on Kicking Music, 268 F. Supp. 3d at 591 (quoting In re Millenium Seacarriers, Inc., 458 F.3d 92, 98 (2d Cir.2006)).

**Discussion**

I.   Threshold Requirements

   A. Threshold Requirements

     The threshold requirements are met here. First, the parties in the Pakistan Suit and in this Court are essentially the same. Chishti argues that the parties in both suits are different because there are additional parties in the Pakistan Suit; however, the parties need not be identical. If the parties bear "substantial similarity and affiliation" and are "real parties in interest" in both matters, then this requirement will be satisfied. Accord Paramedics, 369 F.3d at 652. Here, the additional defendants in the Pakistan Suit (with the exception of the Securities and Exchange Commission of Pakistan) are board members of the corporations that are parties to the JAMS Arbitration and this suit in this Court. They are real parties in interest involved in each dispute.

     Second, as Chishti has stated several times, this action in this Court would dispose of the Pakistan Suit. E.g. Dkt. No. (127). In fact, Chishti represented to this Court that he will

7

withdraw the Pakistan Suit following this Court's determination of Chishti's pending motion for a preliminary injunction barring Resource Group from impeding the JAMS Arbitration, for which a hearing is scheduled on October 9, 2024. Even apart from that concession, a critical issue this Court must decide is whether the claims Chishti brought in the JAMS Arbitration are barred by the Release Agreement. If they are barred, then Chishti is also prohibited from bringing those claims in the Pakistan Suit. See Paramedics, 369 F.3d at 653 (finding that a district court's ruling concerning the arbitrability of the parties' claim disposed of a foreign litigation).

B. Additional Factors

This Court turns "first to the two additional factors that have been described as having 'greater significance,' namely, whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum." Karaha Bodas Co., 500 F.3d at 126 (citing China Trade, 837 F.2d at 36) (internal citations omitted).

The parties in this case bargained for and agreed upon a forum-selection clause that provides this Court with exclusive jurisdiction to determine whether Chishti's claims in arbitration are barred by the Release Agreement. Release

Agreement at ¶ 2.[3] Courts in this Circuit enjoin parties from proceeding in foreign lawsuits that were filed in violation of an agreed-upon forum selection clause because "there is a strong public policy in enforcing forum selection clauses." Forbes IP (HK) Limited v. Media Bus. Generators, S.A. de C.V., 2024 WL 1743109 at * 5 (S.D.N.Y. Apr. 23, 2024) (collecting cases), Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006) ("Such attempts to make end runs around the forum selection clause and this Court's jurisdiction cannot be tolerated."), aff'd, 246 F. App'x 73 (2d Cir. 2007). Because the Release Agreement provides for the federal Courts of New York to have exclusive jurisdiction over any disputes raised under the Agreement, the Pakistan Suit goes against the public policy of enforcing forum selection clauses and violates the parties' agreement that this Court has jurisdiction to first determine whether Chishti's claims are barred before Chishti's claims are tried on their merits.

---

[3] The forum selection clause states, "This letter agreement shall be governed by New York law and the parties agree to submit to the exclusive jurisdiction of the state and United States federal courts located in the State of New York in respect thereof." Release Agreement at ¶2. That forum selection clause gives this Court exclusive jurisdiction to interpret the Release Agreement to determine whether Chishti's claims are barred. Resource Group Int'l Ltd. V. Chishti, 91 F.4th 107, 114 (2d Cir. 2024). If some of the claims in the JAMS Arbitration are not barred, and therefore may be arbitrated, then Judge Francis will address the underlying merits of those claims.

The remaining factors also lean in favor of an injunction. The Pakistan Suit is vexatious, which is "likely to be present whenever parallel actions are proceeding concurrently." Forbes IP (HK) Limited, 2024 WL 1743109, at *6 (citing China Trade, 837 F.2d at 36). Here, parallel actions on the merits of Chishti's claims are now proceeding concurrently in Pakistan and in the JAMS Arbitration. While the JAMS Arbitration is currently stayed, it is pending, and will be continued once this Court rules on whether Chishti has released his claims. (Dkt. No. 137-3).

The Pakistan Suit will also result in prejudice to Resource Group, who will be forced to litigate simultaneously in Pakistan and New York, despite the parties' bargained-for forum selection clause. See Telecom Bus. Sols., LLC v. Terra Towers Corp., 2024 WL 689519, at *2 (S.D.N.Y. Feb. 20, 2024). The Pakistan Suit will cause inconvenience and expense to both parties, and a high potential for inconsistent rulings, which will be particularly burdensome given the injunctive relief requested. See, e.g., Keep on Kicking Music, 268 F. Supp. 3d at 591.

The Pakistan Suit is a race to supplant the JAMS judgment. Chishti himself has admitted that he is attempting to seek relief in the Pakistan Suit because of his frustration that there has been no ruling in the JAMS Arbitration since it was

10

filed in February 2023.[4] See Dkt. No. 120 (Chishti Opp. to Motion

for Supp. Comp.). Yet, a delay in the JAMS Arbitrations

proceedings does not justify running to another forum in hopes

of obtaining a favorable judgment. Chishti's uncalled for

alternative search for judgment lessens the comity involved in

enjoining a foreign proceeding. Accord Karaha Bodas Co., 500

F.3d at 127 (citing Motorola Credit Corp. v. Uzan, 388 F.3d 39,

60 (2d Cir.2004)).

The China Trade factors are met, and Resource Group

satisfies the test required to obtain an anti-suit injunction.

II.  Preliminary Injunction

Having found the China Trade test satisfied, the Court

turns to the specific preliminary injunction analysis. Several

of the factors used to evaluate a motion for a preliminary

injunction are similar to the factors analyzed supra to

determine whether this Court may enter an anti-suit injunction.

However, as this Court is required to analyze the factors of a

preliminary injunction, a brief analysis is provided.

---

[4] This Court saves for another day a complete explanation for the
delay in the JAMS arbitration. This Court notes only that an
arbitrator was not agreed upon until the end of 2023 and the
parties heatedly dispute who is responsible for any delay in
this Court's proceedings, which have been moving on an expedited
basis. The parties have also entangled themselves in a flurry of
conflicts (even over routine matters such as discovery schedules
and extension requests), which has resulted in nearly ninety
docket entries in the last six months and contributed to any
delay.

Having already found the China Trade factors satisfied, the Court finds that Resource Group has shown a likelihood of success on the merits of its claim to enjoin the Pakistan Suit.

The balance of hardships tips decidedly in Resource Group's favor. If forced to litigate in Pakistan, Resource Group will have to spend time and expense litigating in several forums, despite the forum selection clause, while Chishti will still have the opportunity to litigate his claims in the JAMS Arbitration (if they are not barred by the Release Agreement).

Chishti argues that the Pakistan Suit is essential because the Pakistan court has issued interim relief preventing Resource Group from amending its bylaws. He claims that he needs such protection until this Court rules on whether he has waived his claims or not. However, for two reasons, that concern does not tip the scales in Chishti's favor enough to deny the anti-suit injunction. First, Resource Group has represented to this Court on multiple occasions that it does not have plans to amend its bylaws or other documents. Second, the Pakistan Suit seeks much more than that interim relief, and this Court has no insight into (and declines to speculate about) how the Pakistan Suit will proceed and whether it will provide more than the interim relief currently in place.

The Court finds that, absent a preliminary anti-suit injunction, Resource Group would be subject to the risk of

unpredictable and inconsistent rulings between the Pakistan Suit, the JAMS Arbitration, and this Court. That "specter of inconsistent rulings" constitutes irreparable harm, particularly when Resource Group may be subject to conflicting orders on injunctive relief. E.g., Keep on Kicking Music, 268 F. Supp. 3d at 591.

## Conclusion

For the foregoing reasons, Resource Group's motion for a preliminary injunction enjoining the Pakistan Suit is granted.

So ordered.

Dated:     New York, New York
           September 1**θ**, 2024

                                        *Louis L. Stanton*
                                   LOUIS L. STANTON
                                   U.S.D.J.