ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___5/12/26___

THE RESOURCE GROUP INTERNATIONAL
LIMITED, et al.,

    Plaintiffs-Counterclaim Defendants,

          - against -

MUHAMMAD ZIAULLAH KHAN CHISHTI,

    Defendant-Counterclaim Plaintiff.

MUHAMMAD ZIAULLAH KHAN CHISHTI,

         Counterclaim Plaintiff,

          - against -

THE RESOURCE GROUP INTERNATIONAL
LIMITED, et al.,

         Counterclaim Defendants.

23 Civ. 01760 (LLS)

ORDER

Pending before this Court are three motions to dismiss counterclaim plaintiff Muhammad Ziaullah Khan Chishti's Amended Counterclaim. (Dkt. No. 176) (hereinafter "ACC"). The Resource Group International Limited ("TRG-I"), TRG Pakistan Limited ("TRG-P"), Mohammed Khaishgi, and Hasnain Aslam (collectively "TRG") filed the first motion; PineBridge Global Emerging Markets Partners II, L.P. ("GEM II") filed the second motion; and Mohammad Ali Jameel filed the third motion. (Dkt. Nos. 171, 195, 199). These parties are collectively the "Counterclaim

- 1 -

Defendants." For the foregoing reasons, Counterclaim Defendants' motions are granted in part and dismissed in part.

## Background

The Court assumes familiarity with the background facts and procedural history of this case and recites only those facts necessary to resolve the pending motions.

The Second Circuit directed this Court to "determine the scope of the Release Agreement and thereby consider which claims are arbitrable in the first instance for purposes of ruling on the preliminary injunction." Res. Grp. Int'l Ltd. v. Chishti, 91 F. 4th 107, 115 (2d Cir. 2024). Following this directive, the Court determined the arbitrability of some, but not all, of Chishti's claims in his First Amended Demand for Arbitration ("First Demand"). (Dkt. No. 151) (hereinafter "October 9 Order"). The Court held Chishti's derivative claims were not arbitrable, but his Fourth and Ninth claims were arbitrable. Id.

Chishti then filed a Second Amended Demand for Arbitration ("Second Demand"). See ACC ¶ 53; (Dkt. No. 176-2) (hereinafter "SAD"). The Second Demand asserts fifteen claims in total, including every claim from Chishti's First Demand and four new claims. See SAD. As with the First Demand, the Second Demand primarily alleges breach of a Preferred Stock Purchase Agreement ("SPA"). (Dkt. No. 176-1) (hereinafter "SPA"). The arbitrator deferred assessment of the Second Demand until this Court

determined the arbitrability of its claims.[1] Chishti filed an Amended Counterclaim before this Court based on the Second Demand.

TRG, GEM II, and Jameel subsequently filed motions to dismiss Chishti's Amended Counterclaim for failure to state a claim upon which relief can be granted. They assert that all of the claims in the Second Demand are released by a Release Agreement Chishti signed on January 10, 2022. (Dkt. No. 176-3) (hereinafter "Release Agreement").

### Legal Standard

On a motion to dismiss under Rule 12(b)(6), the court accepts "all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." Kelly-Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] Chishti's Amended Counterclaim states "Judge Francis ruled that Mr. Chishti must now seek an order from this Court regarding the applicability of the Release Agreement to his claims." But he fails to provide a copy of this Order with his Amended Counterclaim. The Court takes judicial notice of the Order, which the TRG Counterclaim Defendants submitted with a prior letter motion regarding the pending arbitration. See (Dkt. No. 170-2).

- 3 -

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Release Agreement releases "any and all" claims "both in law and in equity, known or unknown, suspected or unsuspected, which such person has or ever had against the Released Parties from the beginning of time up through the date of this Release Agreement," which was signed on January 10, 2022. Release Agreement § 1. "Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release." Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 17 N.Y.3d 269, 276 (2011) (internal quotation marks and citation removed). "A valid release provision may warrant dismissal, pursuant to Rule 12(b)(6), of claims encompassed by the release." RBS Holdings, Inc. v. Wells Fargo Century, Inc., 485 F. Supp. 2d 472, 479 (S.D.N.Y. 2007).

## Discussion

### I.    The Scope of Review on the Motions to Dismiss

Chishti and GEM II raise two threshold disputes regarding the scope of this Court's review. The first is whether the Court may reach the merits of Chishti's declaratory judgment claims. Chishti asserts that he only needs to demonstrate a ripe controversy exists, while GEM II asserts that he must plead facts sufficient to show that he is entitled to declaratory relief. See P. Br. at 10-11 (Dkt. No. 206); Def. Reply Br. at 4,

- 4 -

n.2 (Dkt. No. 210). The second is whether the Court may accept as true the allegations in Chishti's Second Amended Demand for Arbitration, as it would a complaint on a motion to dismiss. See P. Br. at 7-8, n.5; Def. Reply Br. at 2-3.

The Second Circuit issued a clear mandate to this Court regarding the pending litigation: determine the scope of the Release Agreement and consider which claims are arbitrable. Res. Grp. Int'l Ltd., 91 F.4th at 115. The Court adhered to this mandate in its October 9 Order, and it will adhere to the mandate when considering the pending motions to dismiss. The Court will evaluate each claim in the Second Demand and determine whether the conduct underlying the claim occurred prior to the execution of the Release Agreement, such that it is not arbitrable, or after the execution of the Release Agreement, such that it is arbitrable.

## II.  Released Claims in the Second Demand

The operative facts underpinning the Court's October 9 Order have not changed, so its holding applies to the pending motions to dismiss. The Second Demand's Fourth and Fourteenth claims (identical to the First Demand's Fourth and Ninth claims) are therefore arbitrable, but any derivative claims are not. See October 9 Order at 1-3.

### a. December 2021 Board Meeting Claims (Claims One, Two, and Three)

Claims One, Two, and Three allege that TRG, GEM II, and Jameel breached the SPA by restructuring the TRG-I Board, withholding a dividend owed to TRG-P, and reinvesting the dividend funds in a TRG-I subsidiary, Greentree. SAD ¶¶ 273-311. Chishti alleges these actions triggered a takeover scheme designed to give Counterclaim Defendants control of TRG-P and TRG-I. Id. ¶ 17. The TRG-P Board voted on these matters at a December 17, 2021 Board meeting, which Chishti's Second Demand concedes: "The key vote of the TRG-P board that launched this scheme occurred on December 17, 2021." Id. ¶ 18; see also (Dkt. No. 172-2) (hereinafter "December 2021 Meeting Minutes"). The first page of the Amended Bye-Laws enshrining the Board's vote confirms the amendments were "effective 19 December 2021." (Dkt. No. 172-7). The Board vote pre-dates Chishti's January 10, 2022 Release Agreement. Accordingly, Claims One, Two, and Three are released and dismissed.

In his briefing, Chishti asserts Claim Two does not pre-date the Release Agreement because the SPA's dividend policy requires TRG-I to pay dividends after the end of the relevant Annual Budget period, which he alleges occurred on June 30, 2022. P. Br. at 19. Chishti does not make this argument in his Second Demand. In fact, his Second Demand asserts that "by

December 6, 2021, Section 8.13 of the SPA required TRG-I to promptly pay a cash dividend of $120 million plus a special dividend of the Ibex shares to TRG-P." SAD ¶ 292 (emphasis added). Even without this contradiction, Chishti's contention that Claim Two post-dates the Release Agreement is unpersuasive. It is undisputed that on December 17, 2021, the Board voted to withhold the dividend and re-allocate the funds to Greentree. See December 2021 Meeting Minutes at Annexure A. It was therefore evident on at least December 17, 2021 - if not December 6, 2021, as Chishti alleges - that the Board would not disburse that dividend, either immediately or at the end of the relevant Annual Budget Period. Claim Two is released and dismissed.

### b. Failure to Disclose Takeover Claim (Claim Five)

Section 8.2(c)(1) of the SPA requires TRG-P, TRG-I, and their subsidiaries to comply with all applicable laws of governments having jurisdiction over them. Several of Chishti's claims allege Counterclaim Defendants violated applicable laws and therefore breached the SPA. The Court considers these laws only to the extent they impose a duty or obligation that pre- or post-dates the Release Agreement. Whether TRG-P, TRG-I, or their subsidiaries violated the laws is a matter reserved for arbitration, if the Claims are arbitrable.

Claim Five alleges that Counterclaim Defendants violated the Pakistan Securities Act, and therefore breached the SPA, by failing to disclose the takeover in public securities filings. SAD ¶¶ 331-343. The Act imposes a duty to "timely" disclose material information, such as a takeover. Securities Act, 2015 § 96 (Pak.) (hereinafter "Pakistan Securities Act"). It therefore follows, and Chishti concedes, that Counterclaim Defendants were required to report the takeover "in the wake of the board's December 2021 vote." SAD ¶ 338. This pre-dates the Release Agreement. Claim Five is released and dismissed.

### c. Oppressive Conduct Claim (Claim Seven)

Claim Seven alleges that Counterclaim Defendants engaged in oppressive and prejudicial conduct by coordinating a "comprehensive scheme […] to usurp control of TRG-I," including "restructuring the TRG-I board," which "effectively disenfranchised" Chishti as a TRG-I shareholder. Id. ¶¶ 362-63. The vote triggering the alleged takeover scheme – which thus triggered the "oppressive conduct" Chishti alleges – occurred on December 17, 2021, which pre-dates the Release Agreement. Claim Seven is released and dismissed.

### d. Fiduciary Duty Claims (Claims Twelve and Thirteen)

Claims Twelve and Thirteen allege TRG-P and TRG-I directors violated their fiduciary duties of loyalty, care, and good faith by restructuring TRG-I's Board and withholding the dividend. Id.

¶¶ 414-438. The conduct underlying these Claims is the same conduct underlying Claims One, Two, and Three, all of which are released and dismissed. The same analysis applies here and requires dismissal of Claims Twelve and Thirteen.

### e. Claims Four and Fourteen

Finally, the Court's October 9 Order held Claims Four and Fourteen were arbitrable against TRG-P and TRG-I, but it did not address whether these Claims were arbitrable against GEM II and Jameel. They are not. Claims Four and Fourteen allege breach of Section 8.2(c)(i) of the SPA, which applies only to the "Parent and/or the Company" and their subsidiaries. Under the SPA, the "Company" is TRG-I, and the "Parent" is TRG-P. SPA Preamble.

GEM II and Jameel are plainly not the Parent (TRG-P) or the Company (TRG-I). They are also not subsidiaries of TRG-P or TRG-I. Jameel, as an individual, cannot be a subsidiary. It is undisputed that GEM II is a "wholly-owned subsidiary of PineBridge Investments Partners LLC," not TRG-P or TRG-I. ACC ¶ 11. GEM II and Jameel therefore bear no obligation under Section 8.2(c)(i), which Chishti's Amended Counterclaim concedes by asserting "the SPA required TRG-P and TRG-I to comply with the 'Applicable Laws of each Governmental Authority having jurisdiction over them.'" ACC ¶ 20 (quoting SPA § 8.2(c)(i)) (emphasis added). Claims Four and Fourteen are dismissed as to Jameel and GEM II.

### III. Unreleased Claims in the Second Demand

#### a. Pakistan Governance Law Claims (Claims Eight, Nine, Ten, and Eleven)

Chishti's Second Demand alleges TRG-P, TRG-I, and their officers violated several Pakistan governance laws, and therefore breached the SPA, after Chishti signed the Release Agreement. Specifically, Claim Eight alleges TRG-P refused to hold a statutorily required extraordinary general meeting in September 2023. SAD ¶¶ 367-77. Claim Nine alleges TRG-I, TRG-P, and their officers improperly filed litigation against Chishti in Pakistan in October 2022. Id. ¶¶ 378-87. Claim Ten alleges TRG-P Board directors violated their fiduciary duties at a February 2023 meeting by fraudulently misrepresenting the status of Chishti's arbitration. Id. ¶¶ 388-406. Finally, Claim Eleven alleges TRG-P failed to hold its statutorily required annual general shareholder meetings in 2022 and 2023. Id. ¶¶ 407-13. The dates pled in these claims all post-date the Release Agreement, and the Court therefore finds Claims Eight through Eleven are not released and are arbitrable.

Counterclaim Defendants assert that these claims are not distinct, independent violations of the SPA, but rather the "continuing effects" of a single injury, the December 2021 takeover. D. Br. at 17 (Dkt. No. 173). This assertion misreads New York's "continuing wrong" doctrine, which distinguishes

- 10 -

between "a single wrong that has continuing effects and a series of independent, distinct wrongs." Henry v. Bank of Am., 48 N.Y.S.3d 67, 70 (2017) (collecting cases). The misconduct Chishti alleges is unlike the archetypal example of a "continuing wrong," which is a single breach with later-accruing consequential damages. The Second Demand alleges TRG-P and TRG-I engaged in several discrete, affirmative actions – such as failing to call multiple shareholder meetings – which allegedly constituted new violations of Pakistan law. If these violations are proven in arbitration, they will constitute independent breaches of Counterclaim Defendants' continuing obligation to comply with all applicable laws. SPA § 8.2(c)(i). Accordingly, these claims are not released and are therefore arbitrable.

### b. Market Manipulation Claims (Claim Six and Fifteen)

Claim Six alleges Greentree, a TRG-I subsidiary, violated the Pakistan Securities Act by engaging in insider trading and market manipulation. SAD ¶¶ 344-357. Chishti alleges Greentree shared undisclosed insider information about its intent to purchase TRG-P stock with another TRG-P shareholder, Maple Leaf, which then allowed Maple Leaf to sell large portions of its TRG-P stock at an artificially inflated price. Id. ¶ 353. Chishti alleges Maple Leaf sold its TRG-P stock between December 2021 to October 2022. Id. ¶ 212. The Court previously found Greentree purchased large amounts of TRG-P stock up to at least May 2022,

which aligns with the timeline asserted in Chishti's market manipulation allegations. See December 3 Order (Dkt. No. 161). The Pakistan Securities Act prohibits "any deal" and "any transaction[]" involving insider information and market manipulation, and thus each transaction constitutes a separate violation. See Pakistan Securities Act §§ 128, 133.

The same analysis that applied to Claims Eight through Eleven applies here. If Judge Francis determines Counterclaim Defendants engaged in insider trading or market manipulation, each transaction after January 10, 2022 would independently violate the Pakistan Securities Act. Because these transactions occurred, at least in part, after the Release Agreement, Claim Six is therefore not released and is arbitrable. Claim Fifteen is a breach of fiduciary duty claim based in part on the same insider trading and market manipulation allegations, so it is therefore arbitrable to the extent it alleges transactions after January 10, 2022.

## IV.  Unclean Hands Doctrine

Chishti's Amended Counterclaim also seeks a declaration from this Court that TRG's unclean hands bar enforcement of the Release Agreement. ACC ¶ 77. The equitable defense of unclean hands applies "where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is directly related to the subject matter in litigation." PenneCom

B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d Cir. 2004) (internal quotation marks and citation omitted).

Chishti's unclean hands argument is based on "recent developments" before the Sindh High Court about an allegedly unlawful tender offer issued by Greentree and TRG-I in January 2025. ACC ¶¶ 55-63. The Sindh High Court determined TRG-P and TRG-I engaged in unlawful or fraudulent activities against Chishti and the companies' shareholders. Id. ¶¶ 59-60. The Pakistan Supreme Court later stayed the Sindh High Court's Order containing these findings. (Dkt. No. 170-1). The litigation in Pakistan is too attenuated from the subject matters in this litigation – the Release Agreement and arbitration – to support a finding of unclean hands. The Pakistan litigation concerns conduct that occurred in January 2025, after Chishti signed the Release Agreement, after he commenced the pending arbitration, and after Counterclaim Defendants commenced the present litigation. The unclean hands doctrine does not bar enforcement of the Release Agreement.

## Conclusion

For the foregoing reasons, the Court dismisses in part and grants in part Counterclaim Defendants' motions to dismiss. Claims One, Two, Three, Five, Seven, Twelve, and Thirteen pre-date the Release Agreement and are therefore not arbitrable. Claims Six, Eight, Nine, Ten, Eleven, and Fifteen may proceed to

arbitration. Claims Four and Fourteen are dismissed as to GEM II and Jameel only, but may otherwise proceed to arbitration. Judge Francis will determine the merits of each remaining claim in the Second Demand.

So ordered.

Dated:    New York, New York

May 12, 2026

Louis L. Stanton

LOUIS L. STANTON

U.S.D.J.